## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| D.R. HORTON, INC.; D.R. HORTON-REGENT, LLC; TRUE HOMES, LLC; LENNAR CAROLINAS, LLC; CALATLANTIC GROUP, INC. f/k/a CHEETAH CUB GROUP CORP., successor by merger to CALATLANTIC GROUP, INC. f/k/a STANDARD PACIFIC CORP., successor by merger to THE RYLAND GROUP, INC; STANDARD PACIFIC OF THE CAROLINAS, LLC; WEEKLEY HOMES, LLC d/b/a DAVID WEEKLEY HOMES f/k/a WEEKLEY HOMES, L.P.; SHEA BUILDERS, LLC; SHEA CUSTOM, LLC; individually, and on behalf of all others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiffs, | |
| v. | |
| CITY OF CHARLOTTE and CHARLOTTE WATER f/k/a CHARLOTTE-MECKLENBURG UTILITY DEPARTMENT, | |
| Defendants. | |

NOW COME Plaintiffs, by and through their undersigned counsel, on behalf of themselves and all others similarly situated, and bring this Class Action Complaint, and complaining of Defendants, and allege and say as follows:

## INTRODUCTORY STATEMENT

1. This is a civil action for declaratory relief and recovery of monetary damages to remedy Defendants' *ultra vires* violation of Plaintiffs' substantive due process rights by adopting, assessing, and collecting the unlawful water and

1

wastewater capacity fees challenged herein as a mandatory condition to Defendants' furnishing future water and wastewater service to Plaintiffs' real properties.

2.     Plaintiffs are residential homebuilders who conduct or have conducted business within the service area of Defendants' water and wastewater systems and who have been required to pay Defendants' unlawful water and wastewater capacity fees as a condition to their properties receiving the use of and services furnished by Defendants' water and/or wastewater systems in the future.

3.     Plaintiffs bring this class action on behalf of themselves and all similarly situated entities and individuals who were charged and paid Defendants' unlawful capacity fees from three (3) years prior to the commencement of this action through June 30, 2018[1] (the "Class").

4.     In this action, Plaintiffs, on behalf of themselves of the Class, seek declarations that Defendants' adoption and assessment of the capacity fees against Plaintiffs was *ultra vires* and in violation of Plaintiffs' rights to substantive due process guaranteed by the United States Constitution and 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution.

5.     Plaintiffs further seek damages on behalf of themselves and the Class, in the form of a refund of all capacity fees previously paid by Plaintiffs to Defendants, along with pre-judgment interest at the rate of 6% per annum from the date of payment of the capacity fees pursuant to N.C. Gen. Stat. § 160A-363, plus an award of their costs, expenses, and attorneys' fees incurred in this action pursuant to 42

---

[1] The period of three (3) years prior to the commencement of this action through June 30, 2018 is hereinafter referred to as the "Class Period."

U.S.C. § 1988, N.C. Gen. Stat. § 6-21.7, and other applicable law.

6. The capacity fees challenged in this action do not concern any lawful water and/or wastewater system development fees adopted and charged by Defendants in accordance with Session Law 2017-138 (H.B. 436), effective October 1, 2017, establishing the "Public Water and Sewer System Development Fee Act," codified as Article 8 of Chapter 162A of the North Carolina General Statutes (the "Act"). Upon information and belief, Defendants began charging water and wastewater system development fees in conformance with the Act on July 1, 2018.

7. This action only concerns capacity fees charged and collected by Defendants prior to Defendants' adoption of lawful water and wastewater system development fees pursuant to the Act. All references herein to N.C. Gen. Stat. § 160A-314(a) shall mean and refer to the provisions of N.C. Gen. Stat. § 160A-314(a) prior to its modification by the Act.

8. Plaintiffs bring this class action on behalf of themselves and all similarly situated entities and individuals who were charged and paid Defendants' unlawful capacity fees from three (3) years prior to the date of the commencement of this action through June 30, 2018 (the "Class Period").

9. Upon information and belief, Defendants have charged and collected capacity fees from Plaintiff and Class in excess of $5,000,000.00 during the class period.

10. Plaintiffs and the Class seek declarations that Defendants' adoption and assessment of the capacity fees was *ultra vires* and in violation of Plaintiffs' and the

Class's rights to substantive due process guaranteed by the United States Constitution and 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution.

11.     Plaintiffs and the Class further seek damages in the form of a refund of all capacity fees previously paid by Plaintiffs and the Class to Defendants, along with pre-judgment interest at the rate of 6% per annum from the date of payment of the capacity fees pursuant to N.C. Gen. Stat. § 160A-363, plus an award of their costs, expenses, and attorneys' fees incurred in this action pursuant to 42 U.S.C. § 1988, N.C. Gen. Stat. § 6-21.7, and other applicable law.

## JURISDICTION AND VENUE

12.     This Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims present substantial, disputed questions of federal law arising under the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

13.     This Court has jurisdiction over Plaintiffs' requests for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.  A genuine and justiciable controversy exists between the parties in that Plaintiffs contend that Defendants' water and wastewater capacity fees were *ultra vires*, unconstitutional, and void, whereas, upon information and belief, Defendants contend the challenged capacity fees were legal.

14.     This Court also has original jurisdiction over this class action pursuant

4

to 28 U.S.C. § 1332(d)(2)(A) because the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interest and costs, and one or more members of the Class are citizens of a State different from the Defendants.

15. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state law claims alleged herein against Defendants are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution and should be tried in a single action.

16. This Court has subject matter and personal jurisdiction over the parties.

17. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because it is the judicial district in which the Defendants are considered to reside as well as the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

18. This action has been filed within all applicable statutes of limitation and repose.

19. Defendants are not entitled to any governmental or legislative immunity because they undertook functions beyond its governmental and propriety immunity.

20. Defendants are not entitled to sovereign immunity or any other immunities, and has, to the extent they have purchased insurance or participate in a

risk pool arrangement, have waived sovereign immunity and all other immunities.

21. All conditions precedent to the filing of this lawsuit have been performed or have occurred.

22. A copy of this complaint has been served on the Attorney General of North Carolina pursuant to N.C. Gen. Stat. § 1-260.

## PARTIES

23. Plaintiff D.R. Horton, Inc. is a Delaware corporation authorized to do business in North Carolina and has done business in Mecklenburg County, North Carolina.

24. Plaintiff D.R. Horton-Regent, LLC is a Delaware limited liability company authorized to do business in North Carolina and has done business in Mecklenburg County, North Carolina.

25. Plaintiff True Homes, LLC is a Delaware limited liability company authorized to do business in North Carolina and has done business in Mecklenburg County, North Carolina.

26. Plaintiff Lennar Carolinas, LLC is a Delaware limited liability company authorized to do business in North Carolina and has done business in Mecklenburg County, North Carolina.

27. Plaintiff CalAtlantic Group, Inc. f/k/a Cheetah Cub Group Corp. is a Delaware corporation authorized to do business in North Carolina and has done business in Mecklenburg County, and is the successor by merger to CalAtlantic Group, Inc. f/k/a Standard Pacific Corp., a Delaware corporation, which is the

6

successor by merger to The Ryland Group, Inc., a Maryland corporation.

28. Plaintiff Standard Pacific of the Carolinas, LLC is a Delaware limited liability company authorized to do business in North Carolina and has done business in Mecklenburg County.

29. Plaintiff Weekley Homes, LLC d/b/a David Weekley Homes f/k/a Weekley Homes, L.P. is a Delaware limited liability company authorized to do business in North Carolina and has done business in Mecklenburg County.

30. Plaintiff Shea Custom, LLC is a North Carolina limited liability company and has done business in Mecklenburg County.

31. Plaintiff Shea Builders, LLC is a North Carolina limited liability company and has done business in Mecklenburg County.

32. The Plaintiffs identified above (hereinafter collectively referred to as "Plaintiffs") are residential homebuilders who have constructed residences within the service area of Defendants' water and wastewater systems and have been required to pay, and have paid, illegal water and/or wastewater capacity fees to Defendants within the time period relative to this action.

33. Defendant City of Charlotte (the "City") is a political subdivision of the State of North Carolina as prescribed by Chapter 160A of the North Carolina General Statutes with the capacity to sue and be sued pursuant to N.C. Gen. Stat. § 160A-11.

34. Defendant Charlotte Water f/k/a Charlotte-Mecklenburg Utility Department is a department of the City which operates and manages the water and wastewater systems for the City and Mecklenburg County, including municipalities

located in Mecklenburg County.

35. At all times relevant to this action, the Defendants were acting under color of state law, statute, or ordinance.

## STATEMENT OF FACTS

**A.  AT ALL TIMES RELATIVE HERETO, MUNICIPALITIES IN NORTH CAROLINA LACKED AUTHORITY TO CHARGE AND COLLECT WATER AND/OR WASTEWATER FEES PRIOR TO THE CONTEMPORANEOUS USE OF THE WATER AND/OR WASTEWATER SYSTEMS BY THE SUBJECT PROPERTY.**

36. The preceding paragraphs are realleged and incorporated herein by reference.

37. A municipality "is a creature of the General Assembly, has no inherent powers, and can exercise only such powers as are expressly conferred by the General Assembly and such as are necessarily implied by those expressly given." *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965). "All acts beyond the scope of powers granted to a municipality are invalid." *Quality Built Homes v. Town of Carthage*, 369 N.C. 15, 19, 789 S.E.2d 454, 457 (2016) (citation omitted).

38. At all times relative hereto, the General Assembly authorized municipalities to charge and collect water and wastewater fees through N.C. Gen. Stat. § 160A-314(a), which provided that "[a] city may establish and revise…rents, rates, fees, charges, and penalties for the *use of* or the *services furnished by* any public enterprise." N.C. Gen. Stat. § 160A-314(a) (emphasis added).

39. On August 19, 2016, the North Carolina Supreme Court filed a decision in *Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 789 S.E.2d 454 (2016),

8

which held that N.C. Gen. Stat. § 160A-314(a) did not grant authority for municipalities to charge for services "to be furnished" in the future, such as fees charged to properties which did not yet have the actual use of water and wastewater services, and no present service was furnished to the property.

40.     The North Carolina Supreme Court in *Quality Built Homes* held that the plain language of N.C. Gen. Stat. § 160A-314(a), allowing the imposition of fees for the "use of or services furnished by" a municipality, only authorizes the imposition of fees for the actual, *contemporaneous* use of the municipality's water and/or wastewater systems.

41.     Under the unambiguous holding of *Quality Built Homes*, Defendants lacked authority, at all times relevant hereto, to impose and assess water and wastewater capacity fees prior to Plaintiffs' properties being connected and having the contemporaneous ability to use the services furnished by Defendants' water and/or wastewater systems.

42.     The North Carolina Supreme Court further held in *Quality Built Homes* that the proper method for a municipality to pay for the costs to expand its water and wastewater systems to serve new development is through its "authority to charge tap fees and to establish water and sewer rates to fund necessary improvements and maintain service to its inhabitants, which is sufficient to address its expansion needs." *Quality Built Homes*, 369 N.C. at 21-22, 789 S.E.2d at 459 (emphasis added).

**B.    AT ALL TIMES RELATIVE TO THIS ACTION, DEFENANTS' WATER AND WASTEWATER CAPACITY FEES WERE *ULTRA VIRES*.**

43.    The preceding paragraphs are realleged and incorporated herein by reference.

44.    At all times relative to this action, Defendants' adopted ordinances, policies, manuals, and customs required residential homebuilders, including Plaintiffs, to pay one-time water and wastewater capacity fees in the amounts annually adopted by Defendant City when submitting any application for water and/or wastewater service or extension of service infrastructure to their properties, before Plaintiffs' properties actually were able to use or were furnished services by Defendants' water and/or wastewater systems. (*See*, *e.g.*, City of Charlotte Code of Ordinances § 23-12 (the "Code"); Charlotte-Mecklenburg Utility Department Revenue Manual (the "Revenue Manual"), p. 20; CMUD Extension Policy (the "Extension Policy") §§ III-2, III-8, III-11, III-13). True and accurate copies of the Code, the Revenue Manual, and the Extension Policy, respectively, are attached hereto as Exhibits A, B, and C, respectively, and incorporated by reference as if fully set forth herein.

45.    At the time of Plaintiffs' required payment of capacity fees, Plaintiffs' properties were not connected to Defendants' water and/or wastewater system(s).

46.    In fact, by Defendants' own estimate, after payment in full of all capacity fees, it typically takes a minimum of four to six weeks before Plaintiffs' properties receive water and/or wastewater services. Where infrastructure extension is required, and must be constructed in advance of service, Defendants estimate a

delay of six to twelve months after payment of capacity fees before properties actually receive service and are able to use Defendants' water and/or wastewater systems. (*See*, *e.g.*, Exhibit D, Brochure, *Residential New Services Connection*, Charlotte Water (the "Brochure")).

47.     Defendants' capacity fees were imposed separate and apart from Defendants' tap fees, called "connection fees" by Defendants, which reflect the actual cost incurred by Defendants to tap a line and connect a subject property to Defendants' water and/or wastewater systems, and are also distinct from Defendants' "meter charges," which cover the cost of installed meters. (*See*, *e.g.*, Ex. C, Extension Policy § III-9).

48.     Defendants' capacity fees were not charged for the "use of" or "services furnished by" Defendants' water and/or wastewater systems, as Defendants' user fees are the fees charged for "actual service received." (*See*, *e.g.*, Ex. B, Revenue Manual; Ex. C, Extension Policy § III-3, 20).

49.     Defendants' capacity charges were charged in addition to and regardless of the further expense Defendants required to be borne by residential homebuilders and/or developers, including Plaintiffs, to extend the infrastructure necessary to connect their properties to Defendants' water and/or wastewater systems, and which Plaintiffs were required to dedicate to the City after construction. (*See*, *e.g.*, Extension Policy § III-9).

50.     Where infrastructure extension was necessary to provide service to Plaintiffs' properties, Defendants required Plaintiffs to pay all capacity fees, in full,

at the time of application to extend, but before the necessary infrastructure was constructed—a process estimated by Defendant to take six to twelve months before properties actually receive service and are able to use Defendants' water and/or wastewater systems. (*See*, *e.g.*, Ex. C, Extension Policy § III-6; Ex. D, Brochure, p. 2).

51. The amount of Defendants' water and wastewater capacity fees were adopted by the City each year as part of the City's annual overall budget adoption process and set forth in the City's schedule of current rates, fees, and charges. Newly adopted capacity fees became effective each year as of the beginning of the fiscal year on July 1.

52. Defendants adopted capacity fees for FY 2016 in the amounts of $674 for water and $2,186 for wastewater for the minimum meter size of 5/8".

53. Defendants adopted increased capacity fees for FY 2017 in the amounts of $703 for water, as well as $2,319 for wastewater for the minimum meter size of 5/8".

54. Defendants again adopted increased capacity fees for FY 2018 in the amounts of $749 for water and $2,645 for wastewater for the minimum meter size of 5/8".

55. Defendants' capacity fees in effect for FY 2016, FY 2017, and FY 2018 were *ultra vires*, as Defendants had no legal authority at that time to charge fees for water and/or wastewater services to be furnished.

56. Defendants' capacity fees could not be negotiated by property owners. Plaintiffs were required by Defendants to pay, and did pay, the unlawful and *ultra*

*vires* capacity fees as a mandatory condition to Defendants furnishing water and/or wastewater service to Plaintiffs' properties.

57. At the time Plaintiffs were required by Defendants to pay the unlawful and *ultra vires* capacity fees, Plaintiffs' properties were not connected to Defendants' water and/or wastewater systems, and there was no contemporaneous or actual use of the systems by the subject properties.

58. Following the enactment of the Act by the General Assembly, Defendants hired Raftelis Financial Consultants, Inc. to perform a system development fee analysis on Defendants' water and wastewater capacity fees (the "Raftelis Analysis"), a true and accurate copy of which is attached hereto as <u>Exhibit E</u>, which is a requirement of the Act.

59. The result of the Raftelis Analysis, dated January 9, 2018, was that the "maximum cost justified level of system development fees that can be assessed by Charlotte Water" was $610 for water and $1,848 for wastewater. (*See* Ex. E, Raftelis Analysis, p. 10).

60. Although the Raftelis Analysis revealed that the maximum cost-justified system development fees for both water and wastewater totaled only $2,458, Defendants were, at the time in FY 2018, charging a total of $3,394 in capacity fees—$936 more per each property connected to Defendants' systems than the "maximum cost justified" fees as determined by Raftelis. (*See* Ex. E, Raftelis Study, p. 10).

61. Defendants adopted the residential system development fees for FY 2019 in the maximum cost justified amounts as determined by the Raftelis Analysis,

of $610 for water and $1,848 for wastewater for the minimum meter size of 5/8". The FY 2019 fees went into effect on July 1, 2018.

62.     Upon information and belief, at all times relative hereto, Defendants deposited the revenue from the capacity fees into a water and wastewater operating fund and used the revenue from the capacity fees for future discretionary spending.

63.     Defendants' capacity fees were charged to new connections to Defendants' water and wastewater systems and were used to fund the cost of future expansion of Defendants' water and/or wastewater systems and accommodate new development. (*See*, *e.g.*, Ex. C, Extension Policy § III-3, 4; Ex. B, CMUD Revenue Manual, pp.. 2, 20).

64.     Prior to initiating this action, Plaintiffs, by and through counsel, contacted counsel for the Defendants by letter of June 5, 2018, requesting any authority by which Defendants believed they were authorized to impose and assess their capacity fees. Plaintiffs followed up on the aforementioned letter with communications including an email of June 22, 2018 and a second email of July 26, 2018.

65.     By email of August 3, 2018, Defendants' counsel indicated that Defendants disagreed with Plaintiffs' contentions, but failed to reference any authority for Defendants to charge the capacity fees challenged herein as requested by Plaintiffs letter and emails.

66.     Over the more than six (6) months that have passed following Plaintiffs' initial letter, Defendants have made no meaningful attempt to offer any authority for

their assessment and collection of their capacity fees and in fact, Plaintiffs have received no further communications from or on behalf of Defendants regarding the matter.

## CLASS ACTION ALLEGATIONS

67. The preceding paragraphs are realleged and incorporated by reference herein.

68. **Class Definition**: Plaintiffs bring this action individually and as a class action on behalf of the following Class: all entities and individuals who paid capacity fees to Defendants at any time between three (3) prior to the commencement of this action and June 30, 2018.

69. Plaintiffs reserve the right to redefine the Class prior to certification.

70. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

71. **Numerosity of the Class/Impracticability of Joinder – F. R. Civ. P. 23(a)(1)**: The Class is so numerous that the individual joinder of all of its members is impractical. Plaintiffs estimate that the Class will consist of well over one thousand (1,000) individuals and entities, and the exact number and identities of all members of the Class will be ascertainable with certainty through examination of public records and discovery from the Defendants. However, it is believed that the Class consists of hundreds of entities and individuals.

15

72.     **Commonality – F. R. Civ. P. 23(a)(3)**: Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting only affecting individual Class members. These common legal and factual questions arise from a common course of conduct of Defendants without variation amongst individual class members,

73.     Factual questions common to all named Plaintiffs and Class members, and will ultimately reach a common conclusion, include:

a.  Whether or not, at the time Defendants' capacity fees were required to be paid, Plaintiffs' and the Class' properties were connected to Defendants' water and/or sewer systems as required to have the ability to contemporaneously use the services furnished thereby;

b.  Whether Defendants would not grant required development approvals to which Plaintiffs and the Class were otherwise entitled if the Fees were not paid;

c.  Whether the Fees exacted from Plaintiffs and the Class by Defendants were used by Defendants to fund expansion of the water and sewer systems; and

d.  Whether the amount of the capacity fees exacted from Plaintiffs by Defendants was related to or proportional to the actual impacts of development on Defendants' water and/or sewer system;

74.     Legal questions common to all Plaintiffs and Class members, which will ultimately reach a common conclusion, include:

a. Whether Defendants' adoption and assessment of the Fees against Plaintiffs and the Class was beyond Defendants' statutory authority, and therefore, *ultra vires* and void;

b. Whether Defendants' pattern, practice, and policy of requiring and collecting capacity fees is *ultra vires* and in violation of Plaintiffs' and the Class members' rights to substantive due process guaranteed by the United States Constitution and 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution;

c. Whether Defendants' capacity fees constitute unlawful exactions, imposed without an essential nexus or rough proportionality to the impact of new construction on the systems and infrastructure; and

d. Whether Plaintiffs and the Class members are entitled to damages in the form of a refund of all capacity fees previously paid by Plaintiffs and the Class to Defendants, along with pre-judgment interest at the rate of 6% per annum from the date of payment of the capacity fees pursuant to N.C. Gen. Stat. § 160A-363, plus an award of their costs, expenses, and attorneys' fees incurred in this action pursuant to 42 U.S.C. § 1988, N.C. Gen. Stat. § 6-21.7, and other applicable law.

75. **Typicality** -- **F. R. Civ. P. 23(a)(4)**: The claims in this Class Action Complaint are typical of the claims of the members of the Class both in the nature and manner by which Defendants' caused injury to the Class members, and the extent of the injury inflicted. Plaintiff and all members of the Class have been similarly

affected by Defendants' practice of charging and collecting the unlawful capacity fees as all Plaintiffs and all other Class members were uniformly required to pay the unlawful capacity fees in the same amount per lot during any fiscal year.

76. **Adequacy of Representation — F. R. Civ. P. 23(a)(4)**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs are represented by the same counsel that represented the plaintiffs in the *Quality Built Homes* case from its inception to its conclusion, and are well-versed in municipal law, having litigated similar local government development fees cases against numerous cities and counties across North Carolina. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of themselves and the Class and have the financial resources to do so. Neither Plaintiffs, nor their counsel, have any interests adverse to or potentially in conflict with the interests of the Class.

77. **Class Certification Under F. R. Civ. P. 23(b)(3)** – **Predominance and Superiority**: The common issues of fact and law presented by this action, including those specified above, are predominant, as they arise out of a common course of unlawful conduct by Defendants which resulted in a common injury to Plaintiffs and the Class. Plaintiffs will present proof that Defendants' fees challenged herein were unlawful and *ultra vires* – proof that is the same for each member of the Class.

78. A class action is superior to other available means of adjudicating the claims of the Class, and is the only means to achieve a fair, efficient, uniform, and conclusive result. Absent certification of a class, each individual Class member is unlikely to pursue recovery of the capacity fees unlawfully exacted from them on an

individual basis, due to the substantial burden and expense associated with the complex, expensive, and extensive litigation necessary to establish Defendants' liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments.

79. Class action litigation is the superior method of adjudication to litigate the claims of Plaintiffs and the Class and presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

**FIRST CLAIM FOR RELIEF**
**(Declaration that Defendants' Adoption and Enforcement of the Capacity Fees was**
***Ultra Vires)***

80. The preceding paragraphs are realleged and incorporated by reference herein.

81. Pursuant to Article VII, § 1 of the North Carolina Constitution and N.C. Gen. Stat. § 160A-4, municipalities in North Carolina only have the authority to exercise powers, duties, privileges and immunities conferred upon them by the General Assembly.

82. As detailed hereinabove, Defendants' capacity fees were invalid because the North Carolina General Assembly did not generally or specifically authorize

19

Defendants, during the relevant time period, to adopt and enforce the water and wastewater capacity fees challenged in this action. *See Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15, 19, 789 S.E.2d 454, 457 (2016) ("All acts beyond the scope of the powers granted to a municipality are [invalid].") (quoting *City of Asheville v. Herbert*, 190 N.C. 732, 735, 130 S.E. 861, 863 (1925) (citations omitted).

83.     Pursuant to 28 U.S.C. §§ 2201 and 2202 and N.C. Gen. Stat. § 1-253, *et. seq.*, Plaintiffs and the Class are entitled to a judgment declaring Defendants' water and wastewater capacity fees *ultra vires*, unlawful, and void, for the reason that Defendants exceeded their statutory authority by adopting, imposing, and enforcing the water and wastewater capacity fees as alleged herein.

## SECOND CLAIM FOR RELIEF
### (Declaration that Defendants' Adoption and Enforcement of the Capacity Fees Violated Plaintiffs' Right to Substantive Due Process)

84.     The preceding paragraphs are realleged and incorporated herein by reference.

85.     Plaintiffs and the Class have a fundamental property interest in the real property against which the capacity fees were assessed and the money that Plaintiffs and the Class were required to pay as capacity fees, which property interests were infringed upon by Defendants' illegal actions complained of herein.

86.     Pursuant to Article VI, clause 2 of the United States Constitution, the Constitution and federal laws made pursuant thereto are the supreme law of the land. In addition, Article VII, § 1 of the North Carolina Constitution, N.C. Gen. Stat. §160A-4, and N.C. Gen. Stat. § 160A-174(b) expressly prohibit municipalities in North

Carolina from exercising powers contrary to the United States Constitution, the North Carolina Constitution, federal law, North Carolina law, or the public policy.

87. The Fourteenth Amendment to the United States Constitution and Article I, § 19 of the North Carolina Constitution prohibits Defendants from depriving Plaintiffs and the Class of their property without due process of law, in violation of the law of the land.

88. By adopting and enforcing the water and wastewater capacity fees, Defendants acted outside the scope of legitimate objectives permitted for municipalities and their departments in North Carolina, exercised powers contrary to federal and state law, as well as the public policy, and charged capacity fees which were unduly oppressive to Plaintiffs and the Class, and deprived Plaintiffs and the Class of their property in violation of the United States and North Carolina Constitutions.

89. Acting under color of state law and in accordance with official policies of Defendants, Defendants and their agents deprived Plaintiffs and the Class of their rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution in adopting the capacity fees by ordinances and requiring payment of the capacity fees as a condition of development.

90. Defendants adopted and imposed the illegal capacity fees with deliberate indifference to Plaintiffs' and the Class's constitutional rights, and unreasonably deprived Plaintiffs and the Class of their property interest in the money

used to pay the illegally-assessed capacity fees required by Defendants, in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, § 19 of the North Carolina Constitution.

91.     Plaintiffs and the Class were deprived of their fundamental property interests by Defendants' government action which shocks the conscience and has no rational relation to a valid state objective, as Defendants lacked any statutory or other authority to assess the capacity fees against Plaintiffs and the Class.

92.     Defendants were aware, or should have been aware, of Plaintiffs' and the Class's clearly established rights, and that their own actions violated federal law and North Carolina law, as the North Carolina Supreme Court has, since at least 1982, "cautioned that municipalities may lack the power to charge for prospective [water and wastewater] services." *Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 20-21, 776 S.E.2d 454, 458 (2016) (citing *Bissette v. Town of Spring Hope*, 305 N.C. 248, 251, 287 S.E.2d 851, 853 (1982)). Further, in its decision in *Quality Built Homes v. Town of Carthage* entered on August 19, 2016, the North Carolina Supreme Court expressly and unambiguously held that fees charged by municipalities for future water and/or wastewater services, such as Defendants' capacity fees, were illegal.

93.     Plaintiffs and the Class are entitled to a declaration that Defendants violated Plaintiffs' and the Class's right to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution.

## THIRD CLAIM FOR RELIEF
### (Refund of Water and Wastewater Capacity Fees as Damages
### 42 U.S.C. § 1983 and N.C. Gen. Stat. § 160A-363)

94.     The preceding paragraphs are realleged and incorporated herein by reference.

95.     Defendants are persons within the meaning of 42 U.S.C. § 1983.

96.     Plaintiffs and the Class had clearly established rights under federal and state law to be free from Defendants' adoption and enforcement of unlawful capacity fees, which deprived Plaintiffs and the Class of their property in derogation of Plaintiffs' and the Class's fundamental right to substantive due process.

97.     Defendants' assessment of the illegal capacity fees violated Plaintiffs' and the Class's substantive due process rights and unreasonably deprived Plaintiffs and the Class of property interests guaranteed by the United States and North Carolina Constitutions through government action that shocks the conscience and has no rational relation to a valid state objective as Defendants had no statutory authority to assess the capacity fees.

98.     Defendants and their agents acted under color of state law and in accordance with official policies of Defendants in imposing and assessing their capacity fees, and deprived Plaintiffs and the Class of their rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution.

99.     As a direct and proximate result of Defendants' violations of Plaintiffs' and the Class's substantive due process rights, Plaintiffs and the Class have suffered

are entitled to recover actual damages in the amount of the water and wastewater capacity fees they were required to pay to Defendants pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, and Article I, Section 19 of the North Carolina Constitution.

100.    Plaintiffs and the Class are further entitled to pre-judgment interest on their refunded capacity fees at the rate of 6% per annum from the date of payment of the fees, as provided by N.C. Gen. Stat § 160A-363(e), and post-judgment interest at the legal rate.

<u>FOURTH CLAIM FOR RELIEF</u>
(Unconstitutional Exaction Without an Essential Nexus or Rough Proportionality)

101.    The preceding paragraphs are realleged and incorporated herein by reference.

102.    Monetary exactions required by a local government as a condition to a local government's grant of a development approval, permit approval, and/or approval of construction, which are designed to offset the impact of the proposed development on the system, must bear an essential nexus or be roughly proportional to the impact that the development in question will have on existing infrastructure. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 133 S. Ct. 2586 (2013).

103.    The amounts charged by Defendants' for the water and wastewater capacity fees do not bear any essential nexus or rough proportionality to the impact, if any, that the connection of Plaintiffs' and the Class's properties would have on Defendants' water and/or wastewater systems, as demonstrated in ways including, but not limited to, the following:

    a)    Defendants' requirement that their capacity fees be paid in

identical amounts for *all* residential connections to Defendants' water and/or wastewater systems, regardless of factors which impact each properties' actual impact on the systems, such as the size of the residences and their anticipated and actual use of capacity;

b)     Further, Defendants' water and wastewater capacity fees were assessed uniformly for all connections without taking into consideration the value of actions required of developers, including Plaintiffs and the Class, at their own expense, in acquiring and dedicating easements and rights-of-way and/or constructing or funding, and ultimately dedicating, extensions and other infrastructure, which financially benefitted Defendants and offset a substantial portion of any expense to Defendants or impacts on the systems associated with connection of Plaintiffs' and the Class's properties thereto;

c)     For any fees imposed for the purpose of offsetting any impacts to Defendants' systems to be roughly proportional and bear an essential nexus to the actual impact of connection of Plaintiffs' and the Class's properties on the systems, any fees charged would have to be reduced by the value to Defendants of the aforementioned acquisitions, construction, and dedications, which mitigated or even eliminated any negative impacts to Defendants' systems. The failure of Defendants to appropriately reduce their capacity fees accordingly renders their capacity fees an unconstitutional exaction in violation of Plaintiffs' and the Class's constitutional rights;

d)     The conclusion of the Raftelis Analysis that the "maximum cost

justified level of system development fees that can be assessed by Charlotte Water" totaled only $2,458—$936 *less* than the total of $3,394 in capacity fees then charged per property by Defendants in FY 2018—further demonstrates that Defendants' capacity fees were without any essential nexus or rough proportionality to the actual impacts to Defendants systems caused by connection of Plaintiffs' and the Class's properties, as the extra $936 could *not* be cost-justified; and

e)      In addition, Defendants' capacity fees lack rough proportionality or an essential nexus to the impacts on Defendants' systems resulting from new connections because as Defendants acknowledge, the fees are used to fund the cost of expansion of Defendants' water and/or wastewater systems to accommodate new future development, rather than to offset any system impacts allegedly caused by Plaintiffs' and the Class's connections. (*See*, *e.g.*, CMUD Extension Policy §§ III-3, III-4; CMUD Revenue Manual, pp. 2, 20).

104.    Defendants' adopted ordinances, manuals, customs, and policies intentionally and unlawfully conditioned Plaintiffs' and the Class's ability to develop their properties upon payment of Defendants' unlawful capacity fees prior to Plaintiffs and the Class having the use of the services furnished by Defendants' systems, thus coercing Plaintiffs and the Class into giving up the money used to pay the capacity fees in violation of Plaintiffs' and the Class's constitutional rights. *See id.*

105.    Plaintiffs and the Class are entitled to a declaratory judgment that

Defendants' water and wastewater capacity fees lack the required essential nexus and rough proportionality and constituted an unlawful exaction in violation of Plaintiffs' and the Class's constitutional rights, and Plaintiffs and the Class are further entitled to damages for violation of their substantive due process rights resulting from Defendants' unlawful exactions.

## FIFTH CLAIM FOR RELIEF
### (Costs, Expenses, and Attorneys' Fees)

106.  The preceding paragraphs are realleged and incorporated herein by reference.

107.  The North Carolina Supreme Court held in *Quality Built Homes* that municipalities "clearly and unambiguously" lack statutory authority to charge for future water and wastewater services. 369 N.C. 15, 789 S.E.2d 454 (2016).

108.  The North Carolina Supreme Court has, since at least 1982, "cautioned that municipalities may lack the power to charge for prospective [water and wastewater] services[.]" *See id.*, 269 N.C. at 20, 789 S.E.2d at 458 (citing *Bissette v. Town of Spring Hope*, 305 N.C. 248, 251, 287 S.E.2d 851, 853 (1982)).

109.  Notwithstanding the caution of the North Carolina Supreme Court in 1982 in the *Bissette v. Town of Spring Hope* decision, or the clear holding of the North Carolina Supreme Court in the *Quality Built Homes v. Town of Carthage* decision entered on August 19, 2016, Defendants nonetheless charged its illegal and *ultra vires* capacity fees through at least June 30, 2018.

110.  Defendants acted outside the scope of their legal authority by imposing, charging, and collecting the illegal and *ultra vires* water and wastewater capacity fees

27

challenged herein.

111.    It was an abuse of discretion for Defendants to charge and collect unlawful water and wastewater capacity fees from Plaintiffs and the Class without authority from the North Carolina General Assembly, and to require payment of their capacity fees which lacked an essential nexus or rough proportionality to the actual impacts of connection of Plaintiffs' and the Class's properties to Defendants' water and wastewater system.

112.    Plaintiffs and the Class are entitled to recover actual costs, expenses, and attorneys' fees incurred in this action pursuant to 42 U.S.C. § 1988, N.C. Gen. Stat. § 6-21.7, and/or other applicable law.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court grant them the following relief:

1)    For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

2)    That the subject water and wastewater capacity fees of Defendants be declared *ultra vires;*

3)    That the subject water and wastewater capacity fees of Defendants be declared unlawful as violating Plaintiffs' and the Class's right to substantive due process as provided by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, Section 19 of the North Carolina Constitution;

4)      That the water and wastewater capacity fees of Defendants be declared unlawful as unconstitutional exactions imposed as a condition of development without rough proportionality or an essential nexus to the impacts caused by the development;

5)      That Plaintiffs and the Class have and recover from Defendants actual damages pursuant to the United States Constitution and 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution, in the amount of the water and wastewater capacity fees paid by Plaintiffs and the Class to Defendants;

6)      That Plaintiffs and the Class have and recover from Defendants pre-judgment interest on the refunded fees at the rate of 6% per annum from the date of payment of the capacity fees, as provided by N.C. Gen. Stat § 160A-363(e), and post-judgment interest at the legal rate;

7)      That Plaintiffs and the Class have and recover from Defendants their actual costs, expenses, and attorneys' fees incurred in this action pursuant to 42 U.S.C. § 1988, N.C. Gen. Stat. § 6-21.7, and/or other applicable law; and

8)      For such other and further relief as this Court may deem just and proper.

THIS, the 11th day of January, 2019

[ATTORNEY SIGNATURES ON FOLLOWING PAGE]

SCARBROUGH & SCARBROUGH, PLLC:

s/ James E. Scarbrough
James E. Scarbrough
N.C. Bar No. 6372
Attorney for Plaintiff
137 Union Street South
Concord, NC 28025
Phone: (704) 782-3112
Fax: (704) 782-3116
jes@sandslegal.net

s/ Madeline J. Trilling
Madeline J. Trilling
N.C. Bar No. 50312
Attorney for Plaintiff
137 Union Street South
Concord, NC 28025
Phone: (704) 782-3112
Fax: (704) 782-3116
mjt@sandslegal.net

s/ John F. Scarbrough
John F. Scarbrough
N.C. Bar No. 41569
Attorney for Plaintiff
137 Union Street South
Concord, NC 28025
Phone: (704) 782-3112
Fax: (704) 782-3116
jfs@sandslegal.net

FERGUSON, HAYES, HAWKINS & DEMAY, PLLC:

s/   James R. DeMay
James R. DeMay
N.C. Bar No. 36710
Attorney for Plaintiff
45 Church St. South
P.O. Box 444
Concord, NC 28026-0444
Phone: (704) 788-3211
Fax: (704) 784-3211
jdemay@fspa.net